IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and HOWARD McDOUGALL, Trustee, | ) ) ) ) |
| Plaintiffs, | ) Case No. 08 CV 2193 ) |
| v. | ) Judge Joan Humphrey Lefkow ) |
| BOB PROPHETER CONSTRUCTION L.L.C., an Illinois limited liability company; BOB PROPHETER AGGREGATES L.L.C., an Illinois limited liability company; BOB PROPHETER CONSTRUCTION EQUIPMENT L.L.C., an Illinois limited liability company; BOB PROPHETER CONSTRUCTION EQUIPMENT II L.L.C., an Illinois limited liability company; and BOB PROPHETER REAL ESTATE L.L.C., an Illinois limited liability company, | ) Magistrate Judge Geraldine Soat Brown ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## DEFENDANTS' MOTION TO DISMISS

Now come Defendants Bob Propheter Construction L.L.C. ("Propheter Construction"), Bob Propheter Aggregates L.L.C., Bob Propheter Construction Equipment L.L.C., Bob Propheter Construction Equipment II L.L.C., and Bob Propheter Real Estate L.L.C. (collectively, "Defendants"), by and through their attorney, Douglas E. Lee of Ehrmann Gehlbach Badger & Lee, and, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, move the Court for entry of an order dismissing the Complaint filed herein. In support thereof, Defendants state as follows:

1.  Through this action, Plaintiffs seek to require Defendants to pay $228,595.59, plus interest, penalties, fees, and costs, for a liability associated with Defendants' alleged withdrawal from the Central States, Southeast and Southwest Areas Pension Fund ("the Pension

Fund"). Incredibly, Plaintiffs proceed with this dubious claim – which Plaintiffs assert here despite knowing Defendants' position and having seen at least those facts Defendants offered in support of that position in the October 3, 2007 initial request for review Defendants filed with Plaintiffs (Complaint at ¶19) – despite never responding to Defendants' position, nor even acknowledging it until now.

2. As Plaintiffs allege in their Complaint, any withdrawal liability of Defendants is established, determined, and governed by the Employee Retirement Income Security Act of 1974, as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("ERISA"), 29 U.S.C. § 1001 *et seq.* (1982) and by the Pension Fund's written Rules and Regulations Pertaining to Employer Withdrawal Liability. Plaintiffs fail to state a cause of action under ERISA upon which relief can be granted.

3. Plaintiffs base their assertion of liability on their allegation that "On December 17, 2006, the Propheter Control Group permanently ceased to have an obligation to contribute to the Pension Fund thereby effecting a 'complete withdrawal' as defined in Section 4203 of ERISA, 29 U.S.C. § 1383." Complaint at ¶ 16. Plaintiffs fail to allege any facts to support either of the legal conclusions on which their collection action rests: that an event occurred on December 17, 2006, which permanently ended Defendants' obligation to contribute to the Pension Fund, and that such alleged cessation effected a complete withdrawal under ERISA § 4203.

4. Plaintiffs also commit critically important procedural errors in an apparent attempt to gain maximum leverage over Defendants in the arbitration that Plaintiffs openly acknowledge was commenced by Defendants in bringing this collection action ten (10) days after Defendants formally filed for arbitration. Complaint at ¶20. Thus, Plaintiffs' collection

action is fatally flawed for at least two substantive reasons and two procedural reasons, and constitutes the implementation of a cynical legal strategy rather than a genuine attempt to collect a bona fide liability, and thus is entirely devoid of merit.

### The Two Substantive Flaws

5. Defendants are not aware of any event that occurred on December 17, 2006, that permanently ended Propheter Construction's obligation to contribute to the Pension Fund. Propheter Construction's relationship with the Pension Fund, however, did permanently change on January 18, 2007. On that date, Defendants sold the operating assets used in their road construction and aggregate businesses to a collection of unrelated purchasers (also working in the road construction and aggregate business) and discontinued active operations, thereby ceasing to have an obligation to contribute to the Pension Fund due to the discontinuance of those operations. For two statutory reasons, though, those sales – as a matter of law – did not effect a withdrawal (whether complete or partial) under ERISA. From the detailed request for review Defendants offered in support of their initial request for review, which Defendants filed with Plaintiffs on October 3, 2007 and which Plaintiffs acknowledge receiving (Complaint at ¶19), Plaintiffs were placed on notice of Defendants' position that both rules applied.

*Building and Construction Industry Rule*

6. Under Section 4203(b) of ERISA, 29 U.S.C. § 1383(b), a withdrawal has not occurred because Propheter Construction is covered by ERISA's "building and construction industry" rule. That rule provides that a building and construction industry employer does not incur withdrawal liability if such employer permanently ceases to have an obligation to contribute to a multiemployer pension fund subject to that rule, so long as that employer does not continue to perform work in the pension fund's relevant jurisdiction for at least five (5) years.

An examination of the statutory rule makes clear that the rule is self-executing and does not permit a pension fund (once subject to the rule) to determine selectively when (and to whom) the rule will be applied.

7. The Pension Fund has long been subject to the "building and construction industry" rule found at ERISA § 4203(b) because it voluntarily adopted that rule years ago; established case law as well as the Pension Fund's written Rules and Regulations Pertaining to Employer Withdrawal Liability confirm this conclusion. *E.g., Central States, Southeast and Southwest Areas Pension Fund v. Robinson Cartage Co.*, 55 F.3d 1318, 1321-1325 (7th Cir. 1995) (discussing application of the "building and construction industry" rule in the context of an enforcement action brought by the Pension Fund); Appendix E to the Pension Fund (Rules and Regulations Pertaining to Employer Withdrawal Liability), Section 7. Properly applied, employers in the building and construction industry are excused from withdrawal liability so long as the four corners of the rule are observed. *Union Asphalts & Roadoils, Inc. v. Mo-Kan Teamsters Pension Fund*, 857 F.2d 1230, 1232 (8th Cir. 1988), *cert. denied*, 490 U.S. 1022 (1989) (holding rule applicable to road construction employer even less directly involved in actual road construction than Propheter Construction).

8. The "building and construction industry" rule set forth in Section 4203(b) of ERISA, 29 U.S.C. § 1383(b) reflects a policy decision by Congress. When it crafted the Multiemployer Pension Plan Amendments Act, and thereby modified ERISA, Congress decided that in certain industries (including the building and construction industry), when an employer leaves the business, its unionized tradesmen generally are hired by other employers competing in the same business – and the pension fund loses nothing, because the new employers pick up

4

where the old employer left off. *See Robinson Cartage Co.*, 55 F.3d 1318, at 1323 (a discussion of the policy rationale underlying the rule).

9. In this case, Propheter Construction (and indeed, each of the Defendants) has permanently discontinued its road construction and aggregate business operations, and thus no longer performs the same type of work in the Pension Fund's relevant jurisdiction. However, the purchasers who acquired Defendants' operating assets expect and intend to continue and expand their road construction and aggregate operations within the Pension Fund's relevant jurisdiction. Since both the rationale for, and the unambiguous written requirements of, the building and construction industry rule are present, Plaintiffs cannot assert any withdrawal liability against Defendants under ERISA § 4203 because the statutory prerequisites to the assertion of such a liability have not been met.

*The Sale of Assets Exception*

10. Under Section 4204(a) of ERISA, 29 U.S.C. § 1384(a), a withdrawal also has not occurred because Defendants made arrangements with the purchasers of Defendants' operating assets to cause ERISA's "sale of assets" exception to apply. Like the building and construction industry rule, an examination of the sale of assets exception makes clear that the exception is self-executing and does not permit a pension fund to determine selectively when (and to whom) the exception will be applied, or make availability of the exception subject to fund-crafted preconditions. An examination of the sale of assets exception also reveals that it is universally applicable to all multiemployer pension funds subject to the withdrawal liability provision of ERISA Title IV, which would make it applicable to the Pension Fund.

11. ERISA § 4204(a) explicitly provides that a complete or partial withdrawal of an employer does not occur under Title IV of ERISA when the employer engages in a <u>bona fide</u>,

arms' length sale of its operating assets to an unrelated party, if (a) the purchaser has an obligation to contribute to the multiemployer pension fund with respect to the seller's operations for substantially the same number of contribution base units for which the seller had a contribution obligation, (b) the purchaser provides to the pension fund, for a period of five (5) plan years commencing after the year in which the withdrawal has occurred, a suitable bond or escrowed amount (except in certain circumstances, where the requirements are excused or waived), and (c) the seller(s) and purchaser(s) make appropriate arrangements in the sales contract(s), so that if the purchaser(s) effect a complete withdrawal (or a partial withdrawal with respect to the subject operations), the seller(s) remain secondarily liable to the pension fund for any withdrawal liability the seller(s) would have had with respect to the subject operations if the liability of the purchaser(s) is not paid.

12. As Plaintiffs know and effectively acknowledge in their Complaint (Complaint ¶19), Defendants' contracts with the purchasers satisfy the requirements set forth in ERISA § 4204(a), and Defendants have otherwise taken steps to assert the benefit of the "sale of assets" exception. As such, because ERISA's "sale of assets" exception also applies, no withdrawal has occurred under Title IV of ERISA and Plaintiffs are foreclosed from asserting that a withdrawal liability has occurred here.

### The Two Procedural Flaws

13. Even if Plaintiffs are held within their rights to assert a withdrawal liability on the part of Defendants (*i.e.*, because Propheter Construction and the other Defendants on January 18, 2007, sold the operating assets used in their road construction and aggregate businesses to a collection of unrelated purchasers and discontinued all active operations), Plaintiffs do not have carte blanche authority to use legal process to bludgeon employers like Defendants into

submission. Congress may have given multiemployer pension fund trustees the benefit of many doubts, *see, e.g.*, Section 4221(a)(3)(A), 29 U.S.C. § 1401(a)(3)(A) (in arbitration proceedings, requiring withdrawing employers to prove by a preponderance that trustees' factual determinations are unreasonable or clearly erroneous), but it did not give them the right to ignore the operative statutory and regulatory rules. Plaintiffs are required to observe and follow scrupulously the reticulated procedural rules found in Section 4219 of ERISA, 29 U.S.C. § 1399, et seq., with the same precision that Plaintiffs have routinely asked this Court to apply and enforce against others with less meritorious defenses. *E.g., Central States, Southeast and Southwest Areas Pension Fund v. Miller*, 868 F. Supp. 995 (N.D. Ill. 1994) (Lefkow, J.).

14. Plaintiffs understandably hang their procedural hat on two key factual assertions: their naked assertion that Defendants permanently ceased to have an obligation to contribute to the Pension Fund on December 17, 2006 (Complaint ¶16), and their at least implicit assertion that the Notice and Demand for Payment of Withdrawal Liability they sent Propheter Construction on or about September 12, 2007, was facially proper. Complaint ¶18. These two assertions provide the foundation for Plaintiffs' contention that they have the unfettered right to transform their Notice and Demand into a simple collection action under ERISA § 4301(b), 29 U.S.C. § 1451(b), once Defendants "failed" to make payment in strict compliance with that Notice and Demand. Complaint ¶¶ 2, 6, 18, 21 and 22.

*Following the Rules*

15. Strict compliance cuts both ways. Plaintiffs certainly assert – in conclusory fashion – that the Notice and Demand was "issued . . . in accordance with Sections 4202(2) and 4219(c)(5)(B) of ERISA". . . Complaint at ¶18. However, Plaintiffs conspicuously neglect to append a copy of that Notice and Demand to their Complaint, while glossing over the extant

7

procedural requirements imposed by ERISA § 4202, which an examination of that statute make plain:

> Act Sec. 4202. **When an employer withdraws** from a multiemployer plan, the **plan sponsor, in accordance with this part, shall—**
>
> (1) **determine the amount** of the employer's withdrawal liability,
> (2) **notify the employer of the amount** of the withdrawal liability, and
> (3) collect the amount of the withdrawal liability from the employer.

ERISA § 4202, 29 U.S.C. § 1382 (emphasis supplied). ERISA § 4202 thus makes clear that multiemployer pension fund trustees must "determine the amount" of withdrawal liability "when" the employer withdraws, must "notify the employer" of that amount, <u>and</u> must then "collect" that "amount," all "in accordance with this part" of ERISA Title IV.

16. The Court of Appeals recently confirmed that multiemployer pension plan trustees must follow the same rules with the same precision they would have the courts apply to others, and that any failure to assert withdrawal liability properly, in a way which complies with the relevant procedural requirements imposed by ERISA, deprives the Court of jurisdiction over the subject matter of this dispute. As the Court of Appeals recently explained:

> When an employer withdraws, the plan sponsor calculates the amount of [withdrawal] liability and, "[a]s soon as practicable," notifies the employer of the liability and demands payment. 29 U.S.C. § 1399(b)(1). **This "notice and demand" must include the amount of liability and a schedule of installment payments. When the employer receives the notice, it must begin paying according to the schedule.** *See Robbins v. Pepsi-Cola Metro. Bottling Co.*, 800 F.2d 641, 642-43 (7th Cir. 1986) (per curiam). The statute places a premium on prompt payment; it is a "pay now, dispute later" scheme. *Id.* at 642. **But the withdrawing employer "owes nothing" until the plan notifies it of its liability and demands payment.** *Milwaukee Brewery Workers' Pension Plan v. Joseph Schlitz Brewing Co.*, 513 U.S. 414, 423, 115 S. Ct. 981, 130 L. Ed.2d 932 (1985).

*Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund, et al. v. El Paso CGP Company, et al.*, Nos. 06-3362, 06-3397, 06-4040, 07-1353, slip op. at 3 (7th Cir. May 13, 2008). (Emphasis supplied.)

17. Here, when Plaintiffs sent Defendants the Notice and Demand which precipitated this collection action, Plaintiffs at best provided Defendants with nothing more than a ballpark figure, not based on the plan year in which Propheter Construction actually ceased to have a permanent obligation to contribute to the Pension Fund (2007, versus 2006). Plaintiffs then simply demanded (in that same Notice and Demand) that Defendants pay up, in a single sum, without bothering to comply with ERISA's detailed installment payment rules, and all the while ignoring repeated <u>written</u> assurances from Defendants (capable of being independently verified) that Defendants would do nothing to impair the Pension Fund's ability to collect what it claimed it was owed.

18. Section 4219(b)(1) of ERISA, 29 U.S.C. § 1399(b)(1), expressly requires multiemployer pension plan trustees (like Plaintiffs) to—

    (A)    notify the employer of –

        (i) the amount of the liability, and
        (ii) the schedule for liability payments, and

    (B)    demand payment in accordance with the schedule.

29 U.S.C. § 1399(b)(1). That "schedule for liability payments" must, in turn, comply with several carefully-scripted statutory rules set forth at Section 4219(c)(1), 29 U.S.C. § 1399(c)(1); those rules compel multiemployer pension fund trustees to, <u>inter alia</u>, set forth, in the schedule being provided to the withdrawing employer, a series of annual installments (to be collected quarterly) which in turn must be calculated in accordance with a statutory formula based on the withdrawing employer's contribution history.

9

19. Even in those instances where Plaintiffs ultimately are found to have been correct in their conclusion that a withdrawal has occurred and a withdrawal liability is capable of being asserted, the Plaintiffs thus must follow the rules. *Id.* Moreover, Plaintiffs on at least one occasion have shown that they are not infallible, and that they can (and do) make mistakes. *Central States, Southeast and Southwest Areas Pension Fund v. Hunt Truck Lines, Inc.*, 204 F.3d 736, 739-740 (7th Cir. 2000) (discussing history of case, including the trustees' premature assertion of withdrawal liability).

20. In this case, Plaintiffs do not allege, and cannot allege, that they ever provided Defendants with a schedule of installment payments. In fact, Plaintiffs already concede that they demanded that Defendants pay the withdrawal liability they are asserting not in accordance with a schedule of payments, but rather "in one lump sum." Complaint at ¶ 18.

21. In an apparent attempt to gloss over their failure to provide the requisite schedule of installment payments, Plaintiffs obliquely cite Section 4219(c)(5)(B) of ERISA, 29 U.S.C. § 1399(c)(5)(B). Complaint at ¶18. However, that section permits a plan sponsor to find an employer to be in "default" and thus require immediate payment of an employer's full withdrawal liability only if the employer either fails to make a scheduled payment and fails to cure that failure (an event which incontrovertibly did not occur here, since no schedule was ever tendered, much less observed), or if there is an event which indicates a substantial likelihood that the employer will be unable to pay its withdrawal liability based on rules adopted by the pension fund.

22. Plaintiffs allege no facts which suggest, much less establish, that Plaintiffs either investigated Defendants' ability to pay (or the lack thereof), or that they properly and lawfully determined that there was a substantial likelihood that Defendants would be unable to pay based

on (and in accordance with) reasonable rules that were uniformly applied – which is what relevant federal regulations require. *See* 29 C.F.R. § 4219.33 (2007) (federal regulations, prescribing the standards multiemployer pension funds must follow when adopting and enforcing "plan rules" concerning overdue and defaulted withdrawal liability). Rather, when Plaintiffs tendered their Notice and Demand, Plaintiffs made no attempt to cite to any rule(s) adopted by the Pension Fund, or any facts, to support their "determination" that an event of default had occurred and that they were entitled to demand immediate payment of the full withdrawal liability.

23.     Defendants' prompt request for review of Plaintiffs' Notice and Demand, filed just three weeks later (compare Complaint ¶¶ 18 and 19), and Defendants' formal initiation of arbitration on April 7, 2008 (Complaint at ¶20) readily reveal that Defendants are ready, willing and able to follow the strict requirements set forth in ERISA's reticulated withdrawal liability scheme. Indeed, had Plaintiffs simply followed the express requirements of ERISA § 4219(b)(1) and presented Defendants with a schedule of installment payments even colorably grounded in a January 2007 withdrawal, Defendants would have made the customary quarterly payments (which Defendants estimate at about $7,500 per quarter) and initially relied on ERISA's arbitration procedure to tell its side of the story and urge its reading of the relevant statutes – and the parties would not now be before this Court.

24.     Proof of Plaintiffs' gamesmanship (rather than a good faith reading of ERISA Title IV) can be discerned not only from the timing of the Complaint (from which a connection to Defendants' decision to initiate arbitration can reasonably be inferred) but also from the facially insufficient and unsubstantiated invocation of ERISA § 4219(c)(5)'s "default" rule. Rather than follow ERISA's statutory rules, Plaintiffs instead seek improperly to maximize their

advantage – and their recovery – by now seeking to collect from Defendants not only an improperly calculated $228,595.59 (rather than $7,500 per quarter) but also a 20% penalty based on the entire, unlawfully imposed amount rather than any missed installment payments. While ERISA's withdrawal liability provisions certainly are intended to protect multiemployer pension funds, Plaintiffs here seek to use those rules as a club, to bludgeon employers who insist on asserting their rights.

25.   Defendants acknowledge that the issues raised in this Motion to Dismiss involve both legal and factual determinations, as well as raising important substantive and procedural questions, even though Defendants submit that the many substantive and procedural defects in Plaintiffs' handling of this dispute derail Plaintiffs' instant attempt to collect the withdrawal liability they presently assert, for the reasons set forth in *El Paso CGP Company, supra,* and *Hunt Truck Lines, supra.* Additionally, Defendants have raised in the pending arbitration, *see* Complaint at ¶ 20, the same essential issues they raise in this Motion to Dismiss. Discovery in the arbitration already has commenced. Judicial economy therefore suggests the Court either retain jurisdiction and defer ruling on this Motion to Dismiss, dismiss this case without prejudice, or take some other appropriate action in this matter pending the conclusion of the pending arbitration.

        Respectfully submitted,

        BOB PROPHETER CONSTRUCTION L.L.C., BOB PROPHETER AGGREGATES L.L.C., BOB PROPHETER CONSTRUCTION EQUIPMENT L.L.C., BOB PROPHETER CONSTRUCTION EQUIPMENT II L.L.C., BOB PROPHETER REAL ESTATE L.L.C., Defendants

        By EHRMANN GEHLBACH BADGER & LEE

        By_____
            Douglas E. Lee

Douglas E. Lee (ARDC No. 6207298)
Ehrmann Gehlbach Badger & Lee
Attorneys for Defendants
215 E. First St., Suite 100
P.O. Box 447
Dixon, IL 61021
(815) 288-4949
(815) 288-3068 (FAX)

## CERTIFICATE OF SERVICE

Douglas E. Lee, an attorney, hereby certifies that on June 2, 2008, a copy of the foregoing Motion to Dismiss was filed electronically using the Court's CM/ECF system. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system at the e-mail addresses indicated below. Parties may access this filing through the Court's system:

        Anthony E. Napoli, Esq.
        tnapoli@centralstatesfunds.org
        Central States, Southeast and Southwest
         Areas Pension Fund
        9377 W. Higgins Road, 10th Floor
        Rosemont, IL 60018-4938

        _____
            Douglas E. Lee